2022 IL App (1st) 191493-U

No. 1-19-1493

February 15, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 19225 |
| | ) | |
| ANTHONY DAVIS, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The circuit court properly dismissed defendant's postconviction petition at the second stage where the petition failed to make a substantial showing that trial counsel was ineffective.

¶ 2    Defendant Anthony Davis appeals from the second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). On appeal, defendant contends that he made a substantial showing that trial counsel was ineffective for failing to request a fitness hearing. For the following reasons, we affirm.

¶ 3 Following a bench trial in October 2013, defendant was found guilty of the armed robbery of Toma and Aniela Filkovic and sentenced as a habitual criminal to natural life imprisonment.[1] The facts of this case are detailed in this court's order on direct appeal. See *People v. Davis*, 2015 IL App (1st) 141142-U. Accordingly, we recount only the facts necessary to resolve the present appeal.

¶ 4 In November 2010, defendant was charged by indictment with two counts of armed robbery and two counts of aggravated unlawful restraint against Toma and Aniela. On August 15, 2013, trial counsel informed the court that defendant requested a mental health evaluation. The court advised defendant that he was not automatically entitled to a mental health evaluation, and paused the proceedings for counsel to confer with defendant.

¶ 5 When proceedings resumed, counsel told the court that he had a "lengthy conversation" with defendant, whom he knew for "at least four years," and that he did not have a *bona fide* doubt that defendant was fit for trial. Counsel added that defendant produced a motion contesting the court's jurisdiction due to defendant's "Moorish descent," which counsel considered frivolous and would not file.

¶ 6 The cause proceeded to trial on October 16, 2013. Prior to trial, the court queried defendant regarding his executed jury waiver form. Defendant asserted that he understood the meaning of a trial by jury and that he was relinquishing that right.

¶ 7 At trial, the evidence showed that on November 24, 2010, defendant and another man robbed Toma and Aniela at their store in Cicero, Illinois. Defendant displayed a firearm, and took cigarettes, alcohol, cash, and Toma's wallet.

---

[1] As Toma and Aniela Filkovic have the same last name, we refer to them by their first names.

¶ 8     After the State's case-in-chief, trial counsel informed the court that defendant wished to waive his right to testify. The court admonished defendant regarding his right to testify, and defendant affirmed his decision. Trial counsel also informed the court that defendant rejected a plea agreement which the State had proposed. The court asked defendant if his attorney's representation was accurate, and defendant responded affirmatively.

¶ 9     The court found defendant guilty of both counts of armed robbery and, after a hearing, sentenced him as a habitual criminal to natural life imprisonment.

¶ 10    On direct appeal, defendant argued that the State failed to present evidence that he brandished a firearm within the statutory definition of the term. He also argued the habitual criminal statute violated the federal and Illinois constitutions as applied to him. We affirmed. *People v. Davis*, 2015 IL App (1st) 141142-U.

¶ 11    Defendant subsequently filed a *pro se* postconviction petition.[2] Defendant argued, *inter alia*, that trial counsel was ineffective for failing to request a psychological evaluation to assess his fitness for trial. Defendant contended that due to his "mental health condition and lack of medication," he could not assist trial counsel. According to defendant, he informed counsel that he could not understand the nature and consequences of the proceedings or assist with his defense, but counsel stated on the record that defendant did not need a psychological evaluation.

¶ 12    Defendant further argued that exhibits attached to the petition established that he was unable to assist in his defense because he displayed a "large variety of psychotic symptoms,

---

[2] The copy of defendant's *pro se* petition in the record is not file stamped or notarized, but is dated September 1, 2016.

including illogical reasoning, delusions, and auditory and visual hallucinations." Defendant asserted that he was found unfit in a "recent" criminal matter due to the same mental condition.

¶ 13    The exhibits included letters and reports from examining psychiatrists in case number 05 CR 26782, a criminal proceeding wherein defendant was initially found unfit but was ultimately deemed fit with medication in 2007. Defendant also attached a September 2014 motion for a psychological evaluation in an unrelated federal case, and a June 2015 forensic psychological evaluation which concluded that defendant suffered from psychiatric symptoms which impaired his judgment when not taking antipsychotic medications. Lastly, defendant attached an April 2016 psychologist's treatment summary and request for extension of commitment in the federal case, which concluded that defendant complied with psychiatric treatment and could be restored to competency with continued treatment.

¶ 14    The circuit court advanced defendant's petition to the second stage of proceedings and appointed postconviction counsel. On November 3, 2017, the court granted counsel's motion to subpoena medical records from the Illinois Department of Corrections, court forensic services, and medical facilities.

¶ 15    On April 27, 2018, postconviction counsel filed a supplemental petition and a certificate pursuant to Illinois Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). Counsel argued, in relevant part, that defendant had been diagnosed with schizoaffective disorder and "major depression disorder" during nine psychiatric hospitalizations and was found unfit in case number 05 CR 26782 in 2007. Further, trial counsel in the instant case had represented defendant in a different case beginning in 2011, case number 11 CR 194701, and "was not being truthful" about lacking a *bona fide* doubt regarding his fitness. To that point, postconviction counsel argued

that during proceedings in case number 11 CR 194701, defendant's wife, a mental health counselor, told trial counsel about defendant's mental health issues and medications, prior unfitness findings, and hospitalizations. According to postconviction counsel, trial counsel told defendant's wife, "[n]obody cares about it." Postconviction counsel contended that based on defendant's long history of mental illness, his recent forensic examination, and "his irrational behavior and demeanor in court," a *bona fide* doubt of his fitness existed in the instant case, and therefore, trial counsel's failure to request a fitness hearing was ineffective.

¶ 16    Postconviction counsel attached the June 2015 forensic psychological evaluation in the federal case and the examining psychiatrist's letter to the court in case number 05 CR 26782 opining that defendant was unfit. Counsel also attached the transcript from the instant case where trial counsel informed the court he did not have a *bona fide* doubt of defendant's fitness; the docket information for case number 11 CR 194701, showing defendant was represented by the same trial counsel; defendant's medical records showing he was prescribed several medications from August through November 2013; and Elizabeth Cooper Davis's notarized affidavit.[3]

¶ 17    Elizabeth averred that she was married to defendant, had a master's degree in criminal justice, and was a mental health counselor. In 2003, she noticed defendant exhibit mental health "deficits," including delusions, hallucinations, depression, and anxiety, and that he was suicidal. According to Elizabeth, defendant was diagnosed with "schizo-affective disorder and major depression disorder," and was prescribed medications.

---

[3] As Elizabeth Cooper Davis shares the same last name as defendant, we will refer to her by her first name.

¶ 18 Elizabeth averred that she and defendant first hired trial counsel to represent defendant in 2011, and Elizabeth repeatedly informed counsel about defendant's mental health issues and previous unfitness findings, but counsel told her "[n]obody cares about it." Defendant informed Elizabeth that "[d]uring his trial *** [he] regularly complained *** about his mental health condition and his medications." Both defendant and trial counsel informed Elizabeth that "one day in court" defendant "got very agitated," which Elizabeth averred "should have alerted" trial counsel about defendant's mental health issues.

¶ 19 On April 12, 2019, the State filed a motion to dismiss defendant's petition. In relevant part, the State argued that the allegations did not create a *bona fide* doubt of defendant's fitness for trial on October 13, 2013. Further, the record lacked evidence supporting defendant's claim that he did not understand the proceedings or could not assist trial counsel with his defense. Postconviction counsel filed a reply, arguing that defendant deserved a third-stage evidentiary hearing to determine whether he was unfit for trial. On July 19, 2019, the State filed an amended motion to dismiss defendant's petition, arguing the same points regarding trial counsel's alleged ineffectiveness for failing to request a fitness hearing.

¶ 20 On July 19, 2019, after a hearing, the circuit court dismissed defendant's petition. In ruling, the court commented that defendant could not demonstrate that he was unfit for trial, and thus, could not establish prejudice from trial counsel's failure to seek a fitness hearing. The court noted that the record lacked any indication that defendant did not understand the proceedings. Further, the court commented that the concept of fitness is "so fluid, especially with [defendant's] mental health history," and the record on the day of trial "answers that question on that day."

¶ 21    On appeal, defendant argues that the circuit court erred in dismissing his postconviction petition, which made a substantial showing that trial counsel was ineffective for failing to request a fitness hearing. According to defendant, counsel knew that defendant suffered from mental health issues, was taking psychotropic medications, and had been found unfit in a prior proceeding.

¶ 22    The Act provides a three-stage mechanism for imprisoned persons to collaterally challenge convictions for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et seq*. (West 2018); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). A petition survives dismissal at the first stage if its claims are not frivolous or patently without merit, and the defendant alleges enough facts to raise a claim that is arguably constitutional. 725 ILCS 5/122-2.1(a)(2) (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the second stage, counsel is appointed if a defendant is indigent, and the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-4, 122-5 (West 2018); *People v. Domagala*, 2013 IL 113688, ¶ 33. The circuit court here dismissed defendant's petition at the second stage.

¶ 23    In order to survive dismissal at the second stage of proceedings, the defendant bears the burden of making a substantial showing of a constitutional violation. *Id*. ¶ 35. The court does not engage in fact-finding or credibility determinations, but must take all well-pleaded facts not positively rebutted by the record as true. *People v. Smith*, 2015 IL App (1st) 140494, ¶ 21. The second stage tests the legal sufficiency of the petition, and the petition survives dismissal where the allegations would entitle petitioner to relief if proven at an evidentiary hearing. *Id*. Our review is *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007).

¶ 24    To state a claim of ineffective assistance of counsel, the defendant must demonstrate that (1) counsel's performance "fell below an objective standard of reasonableness," and (2) the

defendant was prejudiced by counsel's deficient performance where a reasonable probability exists that but for counsel's errors, the result of the proceeding would have been different. *People v. Rouse*, 2020 IL App (1st) 170491, ¶ 46 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). If the defendant fails to establish prejudice, then we can dispose of the ineffective assistance claim for that reason alone. *Id.*

¶ 25 Due process bars the prosecution of an unfit defendant. *People v. Hanson*, 212 Ill. 2d 212, 216 (2004). "A defendant is unfit to stand trial if, due to a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in the defense." *People v. Brown*, 236 Ill. 2d 175, 186 (2010); 725 ILCS 5/104-10 (West 2018). If the defense, State, or court raises a *bona fide* doubt as to the defendant's fitness, the court must order a fitness hearing before proceeding. 725 ILCS 5/104-11(a) (West 2018).

¶ 26 The test for whether a court must hold a fitness hearing is objective, and relevant factors which a trial court may consider include a defendant's irrational behavior, demeanor at trial, and any prior medical opinion on competence for trial. *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991). The representations of counsel concerning the defendant's competence, while not conclusive, are another important factor to consider. *Id*. The fact a defendant receives psychotropic medication does not prove a *bona fide* doubt of fitness. *People v. Mitchell*, 189 Ill. 2d 312, 331 (2000). Further, "there are 'no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.' " *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).

¶ 27    To show prejudice from counsel's failure to request a fitness hearing, a defendant must show a reasonable probability exists that, if he received a fitness hearing, he would have been found unfit for trial. *Id.* at 334. Therefore, if a defendant would have been found fit, he suffered no prejudice by not having a fitness hearing. *Id.*

¶ 28    The allegations in defendant's original and supplemental petitions do not establish that a *bona fide* doubt as to his fitness existed at the time of trial. Although the materials attached to both petitions show that defendant was diagnosed with mental illnesses requiring psychotropic medications, the administration of psychotropic medications is not conclusive of a *bona fide* doubt as to defendant's fitness. See *Mitchell*, 189 Ill. 2d at 331. Moreover, while defendant suffered from mental illnesses which had required hospitalizations, the relevant inquiry is whether he could understand the proceedings and cooperate with counsel in his defense at the time of trial. See *People v. Easley*, 192 Ill. 2d 307, 322 (2000) ("The fact that a defendant suffers from mental disturbances or requires psychiatric treatment does not necessarily raise a *bona fide* doubt as to the defendant's ability to understand the proceedings and to assist counsel in the defense."). "[A] defendant may be fit for trial although his or her mind may be otherwise unsound." *Id.*

¶ 29    Although defendant asked trial counsel to file a frivolous motion premised on his "Moorish descent," on August 15, 2013, he has not presented evidence that at the time of trial, he exhibited irrational behavior demonstrating that he could not understand the proceedings or assist with his defense on the date of trial, October 16, 2013. Thus, defendant has not demonstrated facts which support that he was unfit or that trial counsel knew he was unfit on the day of trial. See *Easley*, 192 Ill. 2d at 519 (to establish prejudice from trial counsel's alleged incompetence, a defendant "must show that facts existed *at the time of his trial* that would have raised a *bona fide* doubt" of

his fitness (emphasis added)). Rather, defendant engaged with the court regarding his decisions to waive a jury trial, not testify in his own defense, and reject a plea agreement. Defendant answered the court's questions, and asserted that he understood the rights at issue and his counsel's representation of his decisions. The record thus contains no evidence supporting his claims that he was unfit at the time of trial.

¶ 30    Defendant further contends that his prior unfitness findings from 2007 support a *bona fide* doubt of his unfitness at the time of trial in 2013. While prior unfitness findings are relevant for assessing the existence of a *bona fide* doubt as to a defendant's fitness (*Eddmonds*, 143 Ill. 2d at 518), trial counsel informed the court that he knew defendant well and did not have any *bona fide* doubt as to his fitness at the time of the instant proceedings. Additionally, the June 2015 forensic psychological evaluation describing defendant's psychiatric symptoms and treatments does not provide evidence of defendant's fitness or trial counsel's knowledge thereof at the time of trial in 2013. See *Easley*, 192 Ill. 2d at 519. Defendant contends that trial counsel "was not being truthful" about his lack of a *bona fide* doubt as to his fitness, but presents no evidence refuting trial counsel's assessment of his fitness at the time of trial.

¶ 31    Lastly, Elizabeth's affidavit, taken as true, establishes only that trial counsel knew about defendant's diagnoses, previous unfitness findings, and use of psychotropic medications. Further, Elizabeth averred that defendant was "very agitated" in court once, and during his trial "regularly complained *** about his mental health condition and his medications," but she did not describe facts which establish that defendant could not understand the proceedings or assist with his defense.

¶ 32    Based on the foregoing, defendant provides no support for his conclusion that a reasonable probability exists that he would have been found unfit for trial and, therefore, was prejudiced by trial counsel's failure to seek a fitness hearing. See *People v Pecoraro*, 175 Ill. 2d 294, 324 (1997) ("A defendant cannot rely on speculation or conjecture to justify his claim of incompetent representation."). Defendant has not made a substantial showing that trial counsel's failure to seek a fitness hearing prejudiced him. Thus, the circuit court did not err in dismissing the petition at the second stage of proceedings.

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34    Affirmed.