2022 IL App (1st) 200626-UB

No. 1-20-0626

Order filed April 28, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 17006 |
| | ) | |
| WUILZON CRUZ, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's postconviction petition failed to state the gist of a constitutional claim that his trial proceedings were inadequately translated into Spanish.

¶ 2    Defendant Wuilzon Cruz appeals from the first-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West Supp. 2019)).

Defendant argues that he stated the gist of a claim that Spanish interpreters did not adequately translate his court proceedings. We affirm.[1]

¶ 3 Following a bench trial, defendant was found guilty of eight counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2)-(4) (West 2014)), two counts of aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2014)), one count of robbery (720 ILCS 5/18-1(a) (West 2014)), and one count of aggravated battery (720 ILCS 5/12-3.05(a)(5) (West 2014)). The court merged certain counts and imposed 36 years' imprisonment. We recount only the facts necessary to resolve the instant appeal.

¶ 4 The transcript of pretrial proceedings reflects that defendant is from Honduras. A Spanish interpreter was present at every proceeding, beginning with arraignment on October 3, 2014. On February 11, 2015, the court asked defendant if he needed a Spanish interpreter, and defendant responded affirmatively. The court commented that defendant previously denied he needed an interpreter, and expressed doubt that defendant required one, but instructed defendant to use an interpreter if necessary. The transcripts generally do not note when defendant speaks through the interpreter or when the interpreter translates the proceedings for defendant.

¶ 5 Throughout the proceedings, defendant stated his name for the record, when asked. On various pretrial dates, defendant confirmed that he was indigent and understood warnings about a trial *in absentia*; that he was not to shave before certain forensic tests were completed; and admonishments pursuant to *People v. Curry*, 178 Ill. 2d 509 (1997). Before trial commenced, defendant acknowledged understanding his charges and potential penalties, his right to a jury trial,

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

and his right to contact the Honduran consulate. When asked if he had family in court, however, defendant responded, "No, I have family here in Chicago only."

¶ 6    At trial, D.H. testified that she exited a bus around 5 p.m. on August 28, 2014. Defendant rode by her on a bicycle and slapped her buttocks. D.H. went home but was locked out of her apartment and her roommate was not home. She walked to a liquor store, purchased a few items, and put the change in her bra. She walked through an alley and defendant approached on foot, struck her in the back of the head and knocked her down, and took her money. D.H. did not contact the police because she thought defendant only sought her money.

¶ 7    For the next several hours, D.H. walked between a park, her apartment building, and her boyfriend's home. Multiple times, she noticed defendant following her on a bicycle or on foot, and she stopped at a bar and a restaurant to avoid him.

¶ 8    D.H. returned to her apartment building around 11:30 or 11:45 p.m. D.H.'s roommate was still not home, and D.H. began to exit the building. Defendant was in the building's vestibule. He punched, choked, and bit her. He removed her clothes and penetrated her vagina with his finger and penis. After about 20 minutes, police arrived, defendant exited the building, and the police arrested him. D.H. sustained choke marks on her throat, split skin on her head and eyebrow, and a concussion. The State published a video of the assault taken from a nearby building.

¶ 9    Swabs from D.H.'s vagina and anus were positive for semen, but a forensic scientist testified that they were negative for defendant's DNA. A swab from D.H.'s neck, however, matched defendant's DNA profile.

¶ 10    On cross-examination, the forensic scientist testified that he identified the DNA of at least three individuals in the sperm sample from the vaginal swab. He also identified three individuals'

DNA in the non-sperm sample from the anal swab. There was a major profile in the sperm sample from both swabs which did not match defendant.

¶ 11    Following the State's case-in-chief, the court admonished defendant regarding his right to testify. Defendant declined to testify and affirmed that counsel was resting his case.

¶ 12    The court found defendant guilty of eight counts of aggravated criminal sexual assault, two counts of aggravated kidnapping, one count of robbery, and one count of aggravated battery.

¶ 13    At the sentencing hearing, following arguments in aggravation and mitigation, the court asked defendant if he wished to speak. Defendant responded:

> "All I have to say is that I am innocent of both charges and I am told that you have found me guilty of rape, even though the tests that were done to me do not indicate that I fornicated with the individual. I leave it all in your hands."

¶ 14     The court merged certain counts and imposed a total of 36 years' imprisonment. Defendant indicated he understood his appeal rights.

¶ 15    Defendant appealed, arguing that the trial court imposed an excessive sentence, and we affirmed. *People v. Cruz*, 2019 IL App (1st) 162689-U.

¶ 16    On October 22, 2019, defendant filed a *pro se* petition for postconviction relief under the Act. Defendant claimed that (1) trial counsel provided ineffective assistance for failing to file a motion to suppress DNA evidence, and counsel on direct appeal provided ineffective assistance for failing to raise the issue; (2) the State did not prove his guilt beyond a reasonable doubt or establish the *corpus delicti* of his offenses, and appellate counsel provided ineffective assistance for failing to raise the issues; (3) he was actually innocent; and (4) the trial court imposed an excessive sentence.

¶ 17    Defendant further asserted that he did not speak or understand English, and the interpreters were not fluent in Spanish and failed to adequately translate "all" the proceedings, including the judge's and trial counsel's statements. Defendant alleged that he repeatedly told the interpreters that he did not understand them. In an attached affidavit, defendant averred that he misunderstood trial counsel's advice, which was "confusing" and did not comport with the facts. Defendant also attached a motion for appointment of counsel requesting, in part, a "good" Spanish translator, as in prior proceedings the State "played on" his lack of English skills and "manipulated" him. Defendant attached an affidavit from an inmate who averred that he assisted defendant in preparing his filings.

¶ 18    On January 17, 2020, the circuit court dismissed the petition as frivolous and patently without merit. The court noted that defendant's petition was disorganized and his claims hard to discern. The court did not address his allegations about the interpreters.

¶ 19    Defendant filed an appeal, which we dismissed because the record did not establish it was timely filed. *People v. Cruz*, 2022 IL App (1st) 200626-U. Our supreme court subsequently granted defendant's motion for a supervisory order and directed us to vacate our prior order, reinstate his appeal, and consider his notice of appeal timely filed. *Cruz v. Lampkin*, No. 128098 (Ill. Feb. 2, 2022) (supervisory order). Thus, we now examine the merits of defendant's appeal.

¶ 20    Defendant argues that his petition stated the gist of a constitutional claim that he did not understand his court proceedings because the Spanish interpreters inadequately translated them. Defendant does not challenge the circuit court's rulings on the remainder of the claims in his petition.

¶ 21    The Act provides a three-stage mechanism through which a defendant may assert that he suffered a substantial violation of his constitutional rights during the proceedings which resulted in his conviction. 725 ILCS 5/122-1 *et seq.* (West Supp. 2019); *People v. Bailey*, 2017 IL 121450, ¶¶ 17-18. The Act requires the defendant to "clearly set forth" how his constitutional rights were violated, and attach "affidavits, records, or other evidence" supporting his allegations, or state why the evidence is not attached. 725 ILCS 5/122-2 (West 2018). The supporting evidence must show that the defendant's claims can be corroborated and independently verified. *People v. Allen*, 2015 IL 113135, ¶ 37. The defendant must "identify with reasonable certainty the sources, character and *availability* of the alleged evidence supporting the petition's allegations." (Emphasis in original and internal quotation marks omitted.) *Id.* ¶ 43.

¶ 22    At the first stage of proceedings under the Act, the circuit court determines whether the petition states the gist of a constitutional claim or is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *People v. Brown*, 236 Ill. 2d 175, 184 (2010). The circuit court accepts all well-pleaded allegations as true unless they are positively rebutted by the record. *People v. Williams*, 364 Ill. App. 3d 1017, 1022 (2006). A petition is frivolous or patently without merit if it has no arguable basis in law or fact such that it is "based on an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A legal theory is indisputably meritless when it is "completely contradicted by the record," and a factual allegation is fanciful when it is "fantastic or delusional." *Id.* at 16-17.

¶ 23    At the first stage, the court liberally construes the petition's allegations in the defendant's favor. *Allen*, 2015 IL 113135, ¶ 41. Nevertheless, while a *pro se* defendant may present "a limited amount of detail," he "is not excused *** from providing any factual detail whatsoever on the

alleged constitutional deprivation." *Brown*, 236 Ill. 2d at 184. A petition which alleges nonfactual and nonspecific assertions amounting merely to conclusions will be summarily dismissed at the first stage. *People v. Morris*, 236 Ill. 2d 345, 354 (2010). The circuit court here summarily dismissed defendant's petition at the first stage of proceedings.

¶ 24     We review summary dismissals *de novo*. *Id.* We review the circuit court's judgment, not its reasoning, and thus may affirm on any basis in the record, regardless of the circuit court's reasoning. *People v. Anderson*, 401 Ill. App. 3d 134, 138 (2010).

¶ 25     When a defendant does not fully understand English, fundamental due process requires an interpreter to translate the courtroom proceedings. *People v. Resendiz*, 2020 IL App (1st) 180821, ¶ 25. Failing to provide a defendant with a complete translation of all proceedings could deprive him of his right to a fair hearing. *Id.*

¶ 26     Further, section 1 of the Criminal Proceeding Interpreter Act requires a court to determine whether a defendant is capable of understanding and communicating in English, and appoint an interpreter if not. 725 ILCS 140/1 (West 2014); *People v. Castellano*, 2020 IL App (1st) 170543, ¶ 70. The interpreter is sworn to "truly interpret or translate all questions propounded or answers given." 725 ILCS 140/2 (West 2014); *Castellano*, 2020 IL App (1st) 170543, ¶ 70. The interpreter is also subject to a code of ethics requiring him or her to " 'render a complete and accurate interpretation or sight translation, without altering, omitting, or adding anything to the meaning of what is stated or written, and without explanation.' " *Castellano*, 2020 IL App (1st) 170543, ¶ 71 (quoting Ill. S. Ct. Code of Interpreter Ethics Canon 1, at 4 (eff. Oct. 4, 2014)).

¶ 27     Turning to defendant's postconviction petition, his claims regarding the interpreters are conclusory and nonspecific. In his petition, defendant asserted that the interpreters did not speak

fluent Spanish or adequately translate the proceedings. In his motion for appointment of counsel, he requested a "good" Spanish interpreter as the State had previously "manipulated" him. In an affidavit, he averred that he misunderstood trial counsel's explanations, which were "confusing" and did not comport with the facts. Defendant never explains which proceedings the interpreters inadequately translated, how they inadequately translated them, how or when the State manipulated him, or which of counsel's explanations he misunderstood.

¶ 28    Likewise, defendant claims that he repeatedly told the interpreters he did not understand them, and that we must accept his allegations as true. However, defendant does not explain when he made the statements, to which interpreters he made the statements, or why those statements are not in the record. See *Allen*, 2015 IL 113135, ¶¶ 37, 43 (claims must be capable of independent corroboration, and defendant must identify character and availability of supporting evidence); see also 725 ILCS 5/122-2 (West 2018) (defendant must attach "affidavits, records, or other evidence" supporting his allegations or state why such is not attached). In short, he has not provided "any factual detail whatsoever." *Brown*, 236 Ill. 2d at 184.

¶ 29    Defendant argues that the record shows he did not understand the proceedings. Defendant notes that, when asked if he had family in court, he responded, "No, I have family here in Chicago only," and at sentencing, he stated he had been "told" the court found him guilty, "even though the tests that were done to [him] d[id] not indicate that [he] fornicated with the individual."

¶ 30    Even accepting that the first exchange reflects a miscommunication, however, the record contains numerous instances reflecting that defendant understood the proceedings. For example, at various other proceedings, the trial court asked defendant whether he understood warnings about a trial *in absentia*, that he was not to shave before certain forensic tests were completed, *Curry*

admonishments, his right to a trial by jury, his right to contact the Honduran consulate, his right to testify, that counsel was resting his case, and his appeal rights. Defendant answered appropriately each time, and never indicated he had difficulty understanding the proceedings. See *Resendiz*, 2020 IL App (1st) 180821, ¶ 43 (finding that record refuted claim that defendant did not understand interpreter in part because defendant did not ask questions or voice concerns suggesting that he did not understand proceedings).

¶ 31    Moreover, regarding his statement at sentencing, defendant did not allege in his petition that the interpreters failed to adequately translate the court's guilty verdict or how he learned of the court's verdict if not through the interpreter's contemporaneous translation. The record discloses no evidence that any of the interpreters violated their duties to translate the proceedings completely and accurately under the Criminal Proceeding Interpreter Act or the Illinois Supreme Court Code of Interpreter Ethics. See *Castellano*, 2020 IL App (1st) 170543, ¶¶ 70-72 (noting that record provided no reason to believe interpreter violated obligations).

¶ 32    Defendant compares his case to *People v. Alfaro*, 227 Ill. App. 3d 281 (1992). In *Alfaro*, the defendant filed a postconviction petition alleging that he involuntarily entered his guilty plea as the translator at the plea hearing only provided "synopses of what the translator deemed to be of interest to him." *Id.* at 282-85. The record did not indicate that the prosecutor, judge, or defense counsel spoke or understood Spanish. *Id.* at 285. The circuit court summarily dismissed the petition, but we reversed as the record did not refute the defendant's allegations. *Id.*

¶ 33    Although the record here similarly does not indicate that the prosecutor, judge, or defense counsel spoke or understood Spanish, we find *Alfaro* distinguishable. For one, we have noted that, "significantly, the decision in *Alfaro* offered a very limited factual background and no discussion

of the defendant's participation in the trial court proceedings in its analysis." *Resendiz*, 2020 IL App (1st) 180821, ¶ 34. For another, by alleging that he involuntarily entered his guilty plea because the interpreter provided only synopses of the plea proceedings, the defendant in *Alfaro* made more specific factual allegations than defendant here. *Alfaro*, 227 Ill. App. 3d at 282-85.

¶ 34    *Resendiz* is more instructive. There, the defendant copied the allegations from *Alfaro*. *Resendiz*, 2020 IL App (1st) 180821, ¶ 44. We found that those allegations were not well-pled. *Id.* The defendant further averred that the interpreter and his Spanish-speaking attorney failed to adequately explain in Spanish what a guilty plea was, that he could file a motion to withdraw his plea, or his right to appeal. *Id.* We concluded that those "conclusory statements" were insufficient under the Act. *Id.* Here, by failing to identify which proceedings he did not understand, which interpreters were deficient, or how the translations were inadequate, defendant has provided allegations that are even less specific. Thus, the circuit court did not err in dismissing his petition.

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.