NOTICE

Decision filed 04/28/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240304-U

NO. 5-24-0304

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 08-CF-1583 |
| | ) | |
| THOMAS E. BYRD, | ) | Honorable |
| | ) | Ronald R. Slemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Cates and Justice Moore* concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order granting the State's motion to dismiss at the second stage of postconviction proceedings.

¶ 2    Defendant, Thomas E. Byrd, appeals the Madison County circuit court's granting of the State's motion to dismiss his amended postconviction petition at the second stage of the proceedings. On appeal, defendant argues that postconviction counsel provided unreasonable assistance by failing to provide sufficient evidentiary support in defendant's amended postconviction petition to support defendant's ineffective assistance of plea counsel claim,

_____

*Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

violating Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the following reasons, we affirm.

¶ 3                                        I. Background

¶ 4      We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address defendant's specific arguments.

¶ 5      On May 5, 2009, defendant entered into a partially negotiated open guilty plea agreement with the State, whereby defendant pled guilty to home invasion (720 ILCS 5/12-11(a)(1) (West 2008)) and aggravated kidnapping (*id.* § 10-1(a)(1)) of his wife at the time, Melissa Hernandez. Prior to entering into the agreement, the State offered the following factual basis:

> "[Hernandez] was home by herself, that the defendant approached her residence, and that he threw a paving stone through her back door, entered into her residence and then entered into her bedroom.
> He was not a peace officer nor has he ever been a peace officer in the line of duty. At that point in time[,] he then entered into her bedroom. A physical confrontation then ensued. Afterwards the Defendant and the victim had sexual intercourse. After that[,] the Defendant insisted that the victim come with him over to St. Louis to the bus station.
> As they were in the vehicle leaving, the victim was attempting to exit the vehicle. The Defendant did not allow her to leave the vehicle. Once they crossed over the river[,] *** another physical altercation confrontation ensued where the Defendant then bit a decent chunk out of the victim's temple."

Defendant subsequently pled guilty, and the circuit court accepted defendant's plea.

¶ 6      On July 22, 2009, the circuit court sentenced defendant to two concurrent terms of 24 years in prison followed by 3 years of mandatory supervised release. Defendant filed several *pro se* motions to withdraw his guilty plea. In defendant's May 6, 2010, *pro se* amended motion to withdraw guilty plea, he argued ineffective assistance of plea counsel claiming he was "tricked, cajoled, and coerced" by plea counsel to plead guilty. In addition, defendant claimed that plea counsel was ineffective for failing to present, at any time, that (1) defendant acted in self-defense to "the aggressive attack by" Hernandez during the ride to the bus station in St. Louis, Missouri;

2

(2) Hernandez voluntarily agreed to drive defendant to the bus station, as stated by Hernandez in her signed police statement; and (3) Hernandez stated in her signed police report that she was "NOT alarmed or frightened in any way of any harm" by defendant when he arrived at her home "only to ask for a ride to the bus station." In addition, defendant asserted that the State willfully withheld the "signed police statement" from defendant "that would clearly demonstrate that the alleged victim willfully and freely participated in sexual contact, willfully and freely gave defendant a ride to the bus station."

¶ 7     On July 14, 2010, the circuit court held an evidentiary hearing on defendant's motion to withdraw guilty plea. The court asked defendant, appearing *pro se*, if he had witnesses to call, and defendant declined. Defendant argued that he had an email exchange between Hernandez and defendant's sister, Christine Byrd, indicating that Hernandez "never told the police that [he] kidnapped her or forced her to have sex" with him. Defendant argued that his plea counsel should have presented this evidence to the court. Prior to denying defendant's motion, the court reminded defendant that defendant said he was satisfied with his attorney's representation and advice before the court accepted his guilty plea. In denying defendant's motion, the court did not find a sufficient basis to allow defendant to withdraw his guilty plea, finding that no evidence demonstrated fault on plea counsel's part involving an alleged email. Rather, the court stated that "all of this information was known to [defendant] at the time of the plea."

¶ 8     Defendant appealed, arguing that the circuit court improperly allowed him to proceed *pro se* on his motion to withdraw guilty plea and denied him a fair hearing, where the court applied an incorrect standard and erroneously stated that the testimony from the victim would not support his motion. *People v. Byrd*, 2012 IL App (5th) 100343-U, ¶¶ 19, 28. This court affirmed the circuit court's denial of defendant's motion to withdraw guilty plea, finding the record demonstrated

3

defendant knowingly, intelligently, and voluntarily waived his right to counsel for the hearing on his motion to withdraw guilty plea and that no evidence showed the court denied him the right to call a witness. *Id.* ¶¶ 26, 30.

¶ 9    On October 22, 2012, defendant filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2010)). Defendant argued in the petition that he was denied effective assistance of plea counsel and his right to call a witness, specifically, Hernandez. Defendant claimed that he informed plea counsel that, if called to testify, Hernandez would testify that defendant "never forced her to have sex or forced her to take me to the St. Louis Bus Station." Defendant also claimed that Hernandez would testify that he "never used force or a threat of force to get sex or a ride to the Bus Station." Defendant also filed *pro se* motions for appointment of counsel and sentence reduction that same day. In his motion for sentence reduction, defendant claimed that he had "a signed statement from [Hernandez] that says the State lied" that Hernandez "sa[id] she was sexually assaulted (formally known as [r]ape) in her home." Defendant attached a scanned document of an email correspondence between defendant's sister, Christine, and Hernandez, dated September 22, 2008, in which Christine asked Hernandez if defendant raped her. Christine stated in the email that defendant denied raping Hernandez.

¶ 10    Hernandez's response to Christine's email, dated September 24, 2008, stated that she forgave defendant "because [she] believe[d] that Satan had control of him that night." Hernandez then detailed the events of the night. Hernandez stated that defendant broke into her home at 11:45 p.m. while she was asleep. According to Hernandez, defendant broke into "a big glass door in the back of my apartment and he ran upstairs and broke into my room because I had that door closed too." Hernandez stated she had a knife, so she started "stabbing away" in the dark when defendant entered her bedroom. Once defendant announced himself, Hernandez put the knife down.

4

Defendant, who had alcohol on his breath and was "on something else too," started to look through Hernandez's clothes and proceeded to smell her underwear. Defendant then told Hernandez to take off her clothes and have sex with him. She initially declined because she was on her period, but then complied. She stated that she did not enjoy the sex and "at no time" did she consent to having sex with defendant. Hernandez then stated that defendant "told me to take him to the bus station," and he refused to let Hernandez drive. During the drive, defendant accused Hernandez of cheating on him. As defendant and Hernandez crossed over a bridge from Illinois to Missouri, defendant stated to Hernandez: " 'You are going to die tonight!' " Hernandez tried to escape the car, but defendant pulled her hair and locked the car windows and doors. In an attempt to escape, Hernandez "messed with the st[ee]ring wheel" to run into other cars or go over the bridge. According to Hernandez, defendant did not drive to the bus station but headed "towards a dark road." Once defendant stopped the car, he continued to hit Hernandez before he "took a big bite [out] of my face" and threw the skin of her face on the backseat of the car. Hernandez escaped from the car. While running away from the vehicle, Hernandez saw a couple who called 9-1-1 on her behalf. Hernandez stated that she "felt *** [defendant] was going to kill [her]" that night. Hernandez indicated that she underwent facial surgery following the incident.

¶ 11    The circuit court appointed counsel and advanced defendant's petition to the second stage of proceedings. Defendant's appointed postconviction counsel did not file an amended postconviction petition, based on defendant's insistence that they proceed on defendant's *pro se* petition. Appointed postconviction counsel subsequently filed a "Rule 604(d)" certificate of compliance. The State filed a motion to dismiss, arguing that defendant failed to raise his claim on direct appeal, and thus, forfeited the claim. Following a hearing, the court granted the State's motion to dismiss. Defendant appealed, and the State conceded, that postconviction counsel failed

5

to file a Rule 651(c) certificate of compliance and that the record failed to show that counsel substantially complied with the rule. *People v. Byrd*, No. 5-17-0010 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)). This court reversed the circuit court's order dismissing defendant's postconviction petition and remanded the cause for further second-stage proceedings, including the appointment of new postconviction counsel. *Id*. This court issued its mandate on December 9, 2019.

¶ 12     On March 9, 2022, newly appointed postconviction counsel filed an amended postconviction petition. Incorporating defendant's *pro se* postconviction petition, counsel argued that appellate counsel rendered ineffective assistance by failing to "allege and argue that plea trial counsel was ineffective for failure to investigate the case," and  plea counsel was ineffective for failure to talk with two witnesses prior to advising defendant to enter into the plea to receive "7-8 years in the department of corrections." Postconviction counsel filed an amended certificate of counsel pursuant to Rule 651(c). In response, the State filed an amended motion to dismiss defendant's postconviction petition on April 19, 2022.

¶ 13     On October 2, 2023, defendant's appointed postconviction counsel filed an amended postconviction petition and a Rule 651(c) certificate of compliance. Postconviction counsel incorporated defendant's prior postconviction petitions (October 22, 2012, and March 9, 2022) and also argued that plea counsel failed to investigate and talk to two witnesses—Hernandez and Christine—in anticipation of defendant's trial. Postconviction counsel attached an unnotarized affidavit of defendant attesting that Hernandez would testify that she and defendant had consensual sex, and that Hernandez, understanding defendant had been drinking alcohol, "asked" defendant if he was able to drive himself. Defendant also stated that Hernandez would testify that, although she and defendant argued that night, defendant did not threaten to kill her if she failed to comply

6

with his requests to have sex or drive him to a bus station. Defendant also attested that Christine would testify that she spoke to Hernandez who admitted that defendant did not force or threaten Hernandez to have sex or drive defendant to the bus station. Defendant further claimed his "innocence in this matter." Defendant did not attach the email correspondence to the amended postconviction petition.

¶ 14 On October 11, 2023, the State filed a second amended motion to dismiss. The State argued that defendant's argument that Hernandez would testify that defendant did not force her to have sex or drive him to a bus station was based on an "email correspondence between his sister, Christine Byrd, and the victim, Melissa Hernandez, dated September 24, 2008." The State indicated that it appeared defendant's plea counsel received the email correspondence "as of January 5, 2009, as shown by a forward sent by Christine Byrd to" plea counsel's law office. The State argued that, although defendant wrote an affidavit claiming Hernandez would testify to his innocence, Hernandez herself never filed an affidavit stating that defendant did not sexually assault or kidnap her. The State highlighted various portions of the email, contending that the email did not "absol[ve] [defendant] of guilt, [but] in reality[,] stated the opposite." The State's motion to dismiss stated the following:

> "The email sent by the victim was in response to defendant's sister's email asking, 'I have to ask you did Thomas actually rape you.' In response, the victim states as follows:
>
> a. '… I believe that Satan had control of him that night.'
>
> b. '… he broke into a big glass door… and broke into my room…'
>
> c. '… told me to take off my clothes, I said "no babe, please!" he said, "take off your clothes!" … I didn't want to do it but I took off my clothes and took out my tampon and let him in me … At no time did I enjoy it and at no time did I will him "yes" '

7

d.  [']He accused me of cheating. And asked me if I was willing to take that lie to my grave… he told me "You're going to die tonight!" … I tried to get out but he had locked my door and my window, so I started kicking my window on my side…but I couldn't open or break it. At this time he was pulling my hair… I started messing wit [*sic*] the steering wheel and trying to run us into cars or over the bridge. I just wanted my nightmare to be over … he repeated again, "you are going to die tonight!" Instead of going towards the [bus] station, he headed off towards a dark road, which scared me more because I felt as if we were driving towards hell …' "

The State asserted that a competent attorney with knowledge of this email would not present the email in defense of defendant's claims. In addition, the State argued that defendant himself was aware of the email and made no reference to it at the time of his plea and at sentencing, even though Hernandez reiterated her allegations against defendant in a victim statement that defendant's actions caused her to live with fear " 'every day.' " The State also stated that defendant made his ineffectiveness of plea counsel claim in his motion to withdraw guilty plea.

¶ 15    On November 29, 2023, the circuit court held a hearing on the State's motion to dismiss. At the hearing, the State argued that defendant based his amended postconviction petition on an email exchange between Christine and Hernandez, alleging that Hernandez stated she was not raped or kidnapped by defendant. However, the State argued that Hernandez "does not say anything of that at all in the entire email." Rather, the State asserted that the email provided Hernandez's version of events of "what happened that night, which was consistent with the facts of the case, which was presented in the factual basis to which the defendant pled guilty." As such, the State contended that the email and defendant's assertion that plea counsel was incompetent for failure to investigate and interview Christine and Hernandez were irrelevant. The State also

8

highlighted that there were no affidavits from Christine or Hernandez to support defendant's amended postconviction petition.

¶ 16    In response, postconviction counsel agreed that there was no affidavit from Hernandez, stating:

> "I have yet to be provided a good address and phone number for the victim to be able to talk to the victim to see whether or not that email reads as it does or if my client is in fact correct that that email should be the thing that would exonerate him.

> The information that my client has is old. At one of our status hearings [the State] indicated [they] would not provide me with the address and phone number of the victim. And I have no way of contacting her otherwise to actually get an affidavit to attach."

Postconviction counsel stated that she "contacted" Christine but played "phone tag" with her over the past two months, noting that Christine "works during the day and sometimes can't get out of meetings." Postconviction counsel continued to state that Christine "contacted [her] *** while [she] was sitting in here waiting for this hearing to start." Postconviction counsel asserted that neither defendant's plea counsel nor his first postconviction counsel ever contacted Christine or Hernandez. In response, the State asserted that "[postconviction] counsel told me she did have an address for [Hernandez]." Postconviction counsel responded that she did in fact have an address for Hernandez but "d[id]n't know whether it's a good address."

¶ 17    On February 28, 2024, the circuit court entered a written order granting the State's motion to dismiss defendant's amended postconviction petition at the second stage of the proceedings. In denying defendant's amended postconviction petition, the court found that defendant's postconviction petition failed to make a substantial showing of a constitutional violation, noting that defendant previously raised these facts in his motion to withdraw guilty plea and the claim

9

was addressed by the appellate court (see *Byrd*, 2012 IL App (5th) 100343-U). As such, the court determined defendant's issues had been fully litigated. Defendant filed a timely notice of appeal.

¶ 18                                                    II. Analysis

¶ 19    Defendant argues that postconviction counsel failed to provide reasonable assistance on remand, in violation of Rule 651(c), by failing to provide sufficient evidentiary support for his claim that plea counsel failed to interview two known witnesses prior to defendant's plea agreement. Specifically, defendant asserts that postconviction counsel, similar to plea counsel, failed to properly interview and obtain affidavits from Hernandez and Christine "to determine if they would have previously agreed to give exculpatory evidence on [defendant's] behalf at trial if they had been contacted by [defendant's] plea counsel." Defendant also argues that postconviction counsel failed to present defendant's claim in proper legal form, where counsel failed to explain in either the amended petition or defendant's unnotarized affidavit " 'why' " defendant or counsel believed Christine and Hernandez "would say that they had been willing to provide favorable testimony on [defendant's] behalf." We disagree.

¶ 20    The Act allows a defendant to collaterally attack a final judgment and is not a substitute for an appeal. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act provides a process where a convicted defendant may assert a substantial denial of his or her constitutional rights which occurred in the defendant's original trial or sentencing hearing. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). During the first stage of postconviction proceedings, the defendant has a "low threshold" and only needs to provide sufficient facts to present the gist of a constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). During the second stage, the legal sufficiency of the postconviction petition is tested. *People v. Domagala*, 2013 IL 113688, ¶ 35. The State may file an answer or move to dismiss at this stage. 725 ILCS 5/122-5 (West 2022). The postconviction

10

petition is dismissed if the defendant fails to make a substantial showing of a constitutional violation through the petition and attached documentation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). A postconviction petition dismissal at the second stage is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 21    Here, defendant's postconviction petition was dismissed at the second stage of postconviction proceedings. During the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation. *Domagala*, 2013 IL 113688, ¶ 35 (citing *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). This does not mean that evidentiary questions are resolved at this stage. *Id.* In addition, the court does not engage in any fact-finding or credibility determinations but must take as true " 'all well-pleaded facts that are not positively rebutted by the original trial record.' " *Id.* (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). The second stage of postconviction review tests the legal sufficiency of the petition. *Id.* "Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation." *Id.* In other words, the " 'substantial showing' of a constitutional violation that must be made at the second stage (*Edwards*, 197 Ill. 2d at 246) is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagala*, 2013 IL 113688, ¶ 35.

¶ 22    In postconviction proceedings, the defendant has a statutory, rather than constitutional, right to counsel. 725 ILCS 5/122-4 (West 2022); *People v. Turner*, 187 Ill. 2d 406, 410 (1999). The Act requires postconviction counsel to provide a "reasonable level of assistance." *Turner*, 187 Ill. 2d at 410. Illinois Supreme Court Rule 651(c) imposes specific duties onto postconviction

11

counsel to ensure that a reasonable level of assistance has been provided. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Rule 651(c) provides that,

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 23     Filing a 651(c) certificate creates a rebuttable presumption of reasonable assistance. *People v. Addison*, 2023 IL 127119, ¶ 21. "The defendant bears the burden of overcoming that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule." *Id*. The defendant may overcome this presumption by demonstrating that postconviction counsel did not make all the necessary amendments to a *pro se* petition, including those amendments necessary to overcome any procedural bars. *Id*. If postconviction counsel fails to meet their duties under Rule 651(c), a remand is necessary, regardless of the petition's merit. *Id.* ¶ 42.

¶ 24     Here, the record indicates that postconviction counsel made a concerted effort, although unsuccessful, to interview and obtain affidavits from Hernandez and Christine. Postconviction counsel indicated that she attempted to contact Christine for two months. However, she and Christine played phone tag and had not yet talked on the phone at the time of the November 29, 2023, hearing, on the State's motion to dismiss. In addition, postconviction counsel indicated that she could not get ahold of Hernandez because she did not have a good phone number or address. Based on the record, we cannot conclude that postconviction counsel failed to make a concerted effort to obtain affidavits to support defendant's postconviction petition in an effort to adequately present defendant's claims. See *People v. Johnson*, 154 Ill. 2d 227, 241 (1993) (a circuit court's ruling upon a motion to dismiss a postconviction petition not supported by affidavits or other

12

documents "may reasonably presume that post[ ]conviction counsel made a concerted effort to obtain affidavits in support of the post[ ]conviction claims[ ] but was unable to do so"). Thus, nothing in the record rebuts the presumption that counsel complied with Rule 651(c) at the second stage.

¶ 25 Moreover, and importantly, defendant's assertions contained in his unnotarized affidavit, and similarly stated by postconviction counsel in defendant's October 2, 2023, amended postconviction petition, are contradicted by the record, and his assertions run counter to the evidence contained in the record. First, the email exchange between Christine and Hernandez affirmatively refutes defendant's allegations that Hernandez would testify that (1) she and defendant had consensual sex, (2) she asked defendant if he was able to drive himself to the bus station, and (3) defendant did not threaten to kill her if she failed to comply with his requests to have sex or drive him to a bus station, although the two argued that night of the incident. Furthermore, Hernandez's victim impact statement at defendant's sentencing demonstrates that Hernandez had surgery on her face to repair the damage caused by defendant biting her left temple and continued to experience psychological and mental suffering as a result of the incident.

¶ 26 For the reasons stated above, we find defendant has not presented substantial evidence that postconviction counsel provided unreasonable assistance. Accordingly, we affirm the dismissal of defendant's postconviction petition at the second stage, without an evidentiary hearing.

¶ 27                                    III. Conclusion

¶ 28 For the foregoing reasons, we affirm the order of the circuit court of Madison County granting the State's motion to dismiss defendant's amended postconviction petition at the second stage of postconviction proceedings.

13

¶ 29    Affirmed.